## CIRCUIT COURT OF FREDERICK COUNTY

William M. Evitt et al.

v.

Lake Holiday Country Club, Inc.

July 7, 1989

Case No. (Chancery) C88-275

## By JUDGE ROBERT K. WOLTZ

This is a declaratory judgment suit brought by certain members of a nonstock corporation against the corporation to determine the right of the corporation and its wholly owned subsidiary to vote in elections for the corporation's board of directors. The defendant corporation filed a motion to dismiss on the ground that there is no jurisdiction for the exercise of declaratory judgment procedures. The plaintiffs filed a motion for summary judgment asserting that there are no disputed facts and the case can be determined as a matter of law. Rule 2:21. The motion to dismiss is denied, and the motion for summary judgment is sustained.

In the 1970's, another corporation, Lake Holiday Estates, Inc., by subdivision established a residential community. Part of the plan was that all lot owners be members of a property owners' association. Subsequently, the original corporation encountered financial difficulties, and its secured creditor became the owner of the roads and amenities of the development, as well as unsold lots and other areas within the community. Thereafter, the defendant corporation, being the entity in which the

property owners associated themselves, in a settlement with the creditor, acquired title to most, if not all, of the creditor's realty holdings in the subdivision.

The purpose of the corporation as shown by its articles of incorporation is generally to manage and protect the amenities and roads of the corporation and protect and further the interests of lot owners. The membership of the corporation consists of all lot owners, the owner of more than one lot being considered a single member, but each member has a many votes as lots owned by him, and these are Class A members. Class B members are developers holding lots for development and resale purposes, and developers are entitled to five votes for each lot owned. The board of directors, in whom management of the corporation is vested, are elected annually by the members of the corporation. Defendant corporation also has a wholly owned subsidiary, Lake Holiday Estates Utility Company. The defendant corporation owns 239 lots and its wholly owned subsidiary six lots in the subdivision, and neither pays annual dues on its lots. Individual members are assessed annual dues on the lots they own.

At the 1988 annual meeting of members, two slates of candidates were presented, one by the management of the corporation and the other by certain members. At the meeting, a question was broached whether the board of directors had the right in the election to vote the lots owned by the corporation and its subsidiary. Counsel for the corporation in attendance stated that the directors did have the right to vote both the lots owned by the corporation and those owned by its subsidiary. In the election, the directors did vote the lots of the subsidiary, but not the lots of the corporation. The plaintiff members continue to deny the right of the directors to vote the lots owned by the corporation and its subsidiary.

The first issue necessary to be addressed is the defendant's motion to dismiss this proceeding as not being proper for declaratory judgment disposition. Code Section 8.01-184 restricts declaratory judgment proceedings to "cases of actual controversy." Controversies involving interpretation of written instruments are specifically mentioned. To qualify for declaratory judgment treatment, there must be "actual antagonistic assertion and denial

of right." By § 8.01-191, the declaratory judgment article is stated to be remedial. The statute continues:

> Its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor. It is to be liberally interpreted and administered with a view to making the courts more serviceable to the people.

In conformity with statute, case law also holds these statutes are remedial and to be liberally interpreted. *Reisen v. Aetna Life & Casualty Co.*, 225 Va. 327, 331 (1983). Nevertheless, they do "not vest the courts with authority to render advisory opinions, decide moot questions, or answer merely speculative inquiries," *id.*, and "[a] hypothetical or abstract interest is insufficient to confer standing to bring a declaratory judgment action." *Mosher Steel-Virginia, Inc. v. Teig*, 229 Va. 95, 100 (1985). These cases are also authority that a justiciable controversy is one involving "specific adverse claims" which are "ripe for judicial adjustment." Quoting a text authority on declaratory judgments, *Reisen*, at page 334, holds that the main purpose of declaratory judgment is "to remove clouds from legal relations before they have become completed attacks or disputes 'already ripened.' If there is human probability that danger or jeopardy or prejudice impends from a certain quarter, a sufficient legal interest has been created to warrant a removal of the danger or threat."

In this case, the plaintiffs have a practical and substantive, not a hypothetical, interest in the election of the board of directors of the defendant corporation. Who is elected to the board is dependent on who can vote for the board. Who are on the board and managing its affairs directly affects the plaintiffs in the use and enjoyment of their property interests and the annual dues they must pay for protection of those interests. There are in existence now specific adverse claims by them and the corporation concerning the voting rights

of the board of directors in the elections to the office of director.

The directors claim that in such elections they have the right to vote the lots standing in the name of the corporation and its subsidiary. By resistance to this suit, they continue to assert that right, thereby posing the threat of effectively diluting or nullifying the voting power of the plaintiffs in such elections. Where specific adverse claims existed in the validity of an ordinance which the governing body claimed it has power to enforce, the threat of enforcement was declared within the purview of a declaratory judgment. *Cupp v. Board of Supervisors*, 227 Va. 580 (1984). Analogy between that case and this is not unwarranted.

Though something more than an actual controversy is required to exercise declaratory judgment jurisdiction, whether such jurisdiction will be undertaken is within the sound discretion of the trial court. *Andrews v. Universal Moulded Products Corp.*, 189 Va. 527 (1949). Based on the presently existing uncontroverted facts, the Court finds an actual controversy resulting from "antagonistic assertion and denial of right" ripe for judicial intervention and decision, ie., a justiciable controversy. To say otherwise would subject the plaintiffs, if their candidates lost election to the board of directors, to the necessity of bringing suit to contest the election. Even if they won the suit but the election still went against them despite exclusion of the votes cast by the board, theirs would be a hollow victory. It is best under the remedial purposes and the liberal construction of the declaratory judgment statutes to settle the matter now and not leave the plaintiffs helpless under the permanent threat of a Sword of Damocles.

The motion for summary judgment raises a point apparently novel in this or other jurisdictions so far as the Court is aware. In essence the corporation, through its directors, is asserting that the corporation, because of its ownership of lots, is a member of itself. This claim is an anomaly, untenable semantically or legally; under either semantics or law, it is an impossibility for an entity to be a part of itself, for the whole to be a part of the whole. In a nonstock membership corporation, by language and logic the corporation itself is

incapable of being a member of itself any more than any other thing entire is capable of being a part of itself.

This really settles the matter, but the defendant brings up points of law. The defendant corporation, after invoking provisions of the articles of incorporation on membership and voting rights, asserts that because of lot ownership, it is a member of the corporation and, therefore, entitled to vote the lots standing in its name. Alternatively, defendant asserts that as it is a successor in title to the original developer, it is entitled as provided in the articles of incorporation to vote the lots it owns as a developer.

The articles of incorporation do provide all lot owners shall be members and all members shall have voting rights. Notwithstanding, however, the articles, as basic as they may be to governance of the corporation, cannot by the presumed magic of saying so make true what is patently not true for reason stated above. What they say in this instance can be summarily dismissed with the statement of the late great phrase-maker, Sam Goldwyn, "In two words, impossible." Additionally, the articles, as with other written instruments, should not be construed to reach an illogical result. Drafters of documents presumably do not intend such results, and one as convoluted and outre as this was likely never contemplated.

Furthermore, the result would be contrary to the purpose of these articles and the objectives of the law of participatory type corporations, nonstock or stock. It would put in the hands of the board a means possibly to operate the corporation for the benefit of management to the detriment of the interests of the true beneficiaries, whether they be as here members with direct economic and other interests in corporate affairs, or in other instances stockholders.

In stock corporations by Code § 13.1-640, "Shares that are issues are outstanding shares until they are reacquired, redeemed, converted, or cancelled." By Section 13.1-662 only "outstanding shares" may be voted (and sometimes not even then). The effect of these provisions prevents a corporation from voting its own shares owned by it, no doubt to protect the interests of shareholders. While there is no comparable provision in § 13.1-846 dealing with voting rights in nonstock corporations, by

analogy and for the same reason, the defendant corporation should not have the right to vote as a member based on lot ownership.

The second alternative proposed by the defendant as entitling it to vote may be disposed of briefly. The original developer and any successors down to but not including the defendant were entities separate from this incorporated property owners' association. Thus, each of those discreet entities could logically and semantically be a member of this entity. It is well known that developers of subdivisions such as this frequently make provision for their membership representation in property owner associations in order to exercise a degree of control over the association so that their concepts for the success of the latter, as well as their own economic interests, may be protected. In those instances, the developer is a person distinct from the person of the owners' association, and for that reason the Court construes "developer" as used in the articles of incorporation as not including within its meaning the defendant here.

The final issue is the right of the corporation to vote the lots held by its wholly owned subsidiary, the utility corporation. The subsidiary is a corporate entity distinct from the defendant corporation. Thus being a member because of its lot ownership does not result in it being a member of itself, unless perhaps it and its parent are considered to be one by virtue of factual disregard by the parent of any distinction between them in their management and operation, an argument not pressed here nor shown by the undisputed facts.

Nevertheless, the Court is of the opinion that the lots owned by the subsidiary may not be voted in elections had by the defendant corporation. The provisions of the Virginia Stock Corporation Act, §§ 13.1-601, *et seq.*, and those of the Virginia Nonstock Corporation Act, Sections 13.1-801, *et seq.*, often closely parallel each other, at times nearly *mutatis mutandis*, *e.g.*, § 13.1-661, list of shareholders entitled to vote; and § 13.1-845, list of members entitled to vote; § 13.1-658, notice of meeting; and § 13.1-842 on the same subject. Section 13.1-662 covers the entitlement of shares to vote in a stock corporation, and its subsection D provides:

> The shares of a corporation are not entitled to vote if they are owned, directly or indirectly, by a second corporation, domestic or foreign, and the first corporation owns, directly or indirectly, a majority of the shares entitled to vote for directors of the second corporation.

If the defendant were a stock corporation, then under this provision, any of its shares which might be owned by the utility corporation could not be voted by the directors of defendant in its elections.

The section on voting entitlement of members of nonstock corporations, § 13.1-846, has no comparable prohibition. No doubt this is due to the many diverse types of interest, in this case lot ownership, possessed by such a member which would entitle him to vote. The diversity in nonstock corporations relating to voting rights is pointed up by subsection C, which recognizes this class of corporation may not even have members or its members may have no right to vote. In addition to the lack of any statutory prohibition in § 13.1-846 against voting where the right exists, further distinction here is the fact the parent corporation is a nonstock one and the subsidiary is a stock one.

Despite the lack of correspondence noted between the present case and that of share voting rights in a stock corporation, there is strong analogy of purpose regarding voting rights in the two situations. The prohibition against voting of shares under § 13.1-662(D) is at least in part to preserve corporate democracy, to prevent corporate management from arrogating power to itself in derogation of the rights and interests of the owners of the corporation, its shareholders. The mutation of circumstance from stock corporations to nonstock corporations with voting members who have economic and other interests involved does not change this principle.

Therefore, transposing the prohibition against directors of a parent corporation from voting its shares owned by its controlled subsidiary to a prohibition against the directors of this corporation from voting lots owned by its controlled subsidiary is compatible in purpose. It preserves and furthers the principle of corporate democracy and protection of member rights and interests.

As a result, the defendant may no vote lots owned by its subsidiary. This transposition is contrary to neither legislative nor case authority but rather is of the essence of the common law function of courts: to make decisions based on principle and on precedent, derived from case or statute law or both, to resolve issues arising from novel or changed circumstances.

A decree will enter in conformance with the foregoing holdings.